Dorothy Farley, a Minor, by Charles Farley, Her Parent and Next Friend, Appellee, v. Bradford Mitchell, Appellant.

Gen. No. 38,294.

Opinion filed December 16, 1935.

ROBERTSON, CROWE & SPENCE, of Chicago, for appellant; BURT A. CROWE, of counsel.

FREDERICK A. GARIEPY, of Chicago, for appellee.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

Dorothy Farley, hereafter called plaintiff, while riding as a guest in an automobile driven by defendant, was injured in an accident; she brought suit against Bradford Mitchell and his father, the owner of the automobile which Bradford, then 15 years of age, was driving with his father's permission; upon the trial before the court the cause was dismissed as to the father and judgment was entered against the remaining defendant, Bradford Mitchell, for $2,630.

Defendant filed a motion to vacate the judgment on the ground that Bradford Mitchell was a minor and no guardian *ad litem* had been appointed for him; the judgment was vacated, a guardian *ad litem* was appointed who filed an answer on behalf of defendant; the case was again tried before another trial judge without a jury and the issues were again found against the defendant and judgment was entered against him for $2,500, from which this appeal is prosecuted.

Plaintiff, then 14 years of age, was a guest of the defendant in the automobile at the time and cannot recover damages unless the evidence proves that the accident was caused by the wilful and wanton misconduct of the defendant in operating the automobile which caused the accident and injury to plaintiff. Ill. State Bar Stats. 1935, ch. 95a, ¶ 47 (5). The only question presented is whether the trial court properly found with the plaintiff on this proposition.

The accident happened about 1:30 on the morning of April 2, 1934. A party of young people living in La-Grange, Illinois, went to a dance at Edgewood Valley Club, which is near Joliet; they went to the dance over the Willow Springs road, a concrete highway 18 or 20 feet wide; the shoulders on either side were freshly graded and wet, and at intervals of about 50 or 75 feet signs were placed on the shoulders reading, "Soft Shoulder. Drive carefully." These signs were visible to the members of the party as they went toward the Edgewood Valley Club.

They returned about 1:30 a. m. along the same Willow Springs road, going northerly toward LaGrange; plaintiff was riding in the front seat of the car driven by the defendant and in the rear seat were Kelso Middleton and Lura Fellows; in front of them was another car northerly bound, driven by Jimmie Nelson, containing several young people who had also been at the club and dance; the weather was then dry and clear and it was very dark; the cars were lighted and the warning signs on the road were discernible; both cars were going along at about 35 miles an hour; the young people were in no particular hurry to get home. Defendant first attempted, without success, to pass the Nelson car, and then speeded up his car to 50 miles an hour attempting to pass the Nelson car. Plaintiff testified that she then felt "kind of scared." Middleton, who was in the rear seat, remonstrated with defendant and asked him to slow down, but defendant continued without slackening speed and without giving any warning to the Nelson car of his attempt to pass it. The two left wheels of defendant's car ran off onto the soft shoulder; defendant then turned the wheel to the right to get back to the concrete pavement, which was three or four inches higher than the dirt shoulder; the car ran to the right, in front of the Nelson car, forcing it off the road to the right; without slackening the speed of his car defendant ran off the concrete pavement on the right side, then careened back across the road to the left, and then again to the right shoulder, running into a ditch and then into a telephone pole on the right side of the road which was about 50 yards (or 150 feet) from the point where he originally left the pavement. Defendant's car was in good mechanical condition, with new tires.

Plaintiff was injured in the abdomen, necessitating the removal of the spleen by surgical operation. The extent of the injuries and the amount awarded are not questioned.

A great deal of language has been used in many cases in the attempt to define with mathematical certainty the difference between ordinary negligence and wilful and wanton negligence. More recent cases have held that this is virtually impossible; that whether an act is wilful and wanton depends upon the particular circumstances of each case. In *Bernier v. Illinois Cent. R. Co.*, 296 Ill. 464, the court said: "It is difficult, if not impossible, to lay down a rule of general application by which we may determine what degree of negligence the law considers equivalent to a wilful or wanton act." And in *Bremer v. Lake Erie & W. R. Co.*, 318 Ill. 11, it was said: "What degree of negligence the law considers equivalent to a wilful or wanton act is as hard to define as negligence itself, and in the nature of things is so dependent upon the particular circumstances of each case as not to be susceptible of general statement." However, the decided cases seem to agree that one of the factors distinguishing a wilful and wanton act is, such absence of care for the person of another as exhibits a conscious indifference to consequences. *Lake Shore & Michigan Southern Ry. Co. v. Bodemer*, 139 Ill. 596; *Walldren Express & Van Co. v. Krug*, 291 Ill. 472; *Jeneary v. Chicago & Interurban Traction Co.*, 306 Ill. 392; *Brown v. Illinois Terminal Co.*, 319 Ill. 326; *Streeter v. Humrichouse*, 357 Ill. 234. *Mantonya v. Wilbur Lumber Co.*, 251 Ill. App. 364, involved the collision of two cars; the court said that the defendant's truck came at a high rate of speed, without regard to the plaintiff's rights or safety, and held that such conduct, exhibiting indifference to consequences, "makes a case of constructive or legal wilfulness." *Foale v. Linsky*, 279 Ill. App. 58, involved a guest riding in defendant's automobile where defendant's son attempted to pass a street car and he was warned by plaintiff not to drive so fast. It was held that the jury was justified in finding defendant guilty

of wilful and wanton negligence. In all of the above cases and many others which might be cited, it was held that the question of the conduct of the defendant was for the determination of the jury.

Counsel for defendant cites many cases from other jurisdictions, in which, under other circumstances, the defendant has been exonerated from the charge of wilful and wanton negligence, but such cases are not helpful in the present instance. In the recent opinion in *McGuire v. McGannon,* 283 Ill. App. 293, cited by defendant, the driver of the car, late at night, was going along an unfamiliar road and did not observe that the concrete pavement ended and the car proceeded onward and into a ditch. It was properly held that the driver was not guilty of wanton and wilful conduct in the operation of the car.

In the instant case the conduct of the defendant on a dark night, in recklessly speeding up his car to an excessive speed, not because of any urgency to reach a destination but solely to outstrip the forward car, and against the protest of one of his guests and against the warning signs to drive slowly, and running onto the road shoulder which he knew was soft, showed an indifference to consequences which makes a case of legal wilfulness and wantonness in the operation of his car.

The case before us has been heard by two trial judges, and in both trials the issues of fact have been found against the defendant. Unless the reviewing court can say that the finding in the present case was manifestly erroneous it should not reverse. *Nevius v. Gourley,* 97 Ill. 365. We see no substantial reason for disagreeing with the finding of the court, and the judgment is affirmed.

*Affirmed.*

MATCHETT and O'CONNOR, JJ., concur.